NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| KATRINA ROSS, Plaintiff, v. M.A.C. COSMETICS, INC., Defendant. | Civil Action No. 12-4853 (JLL) **OPINION** |
|---|---|

**LINARES, District Judge.**

This matter comes before the Court upon the Motion of M.A.C. Cosmetics, Inc. ("Defendant" or "M.A.C") for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (ECF No. 39). The Court has considered the submissions made in support of and in opposition to Defendant's Motion, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. Based on the following and for the reasons expressed herein, Defendant's Motion for Summary Judgment is **granted**.

## I. BACKGROUND

Katrina Ross ("Plaintiff") was employed by Defendant as a sales associate and makeup artist from May 2004 to December 2009 ("Compl.," ECF No. 1, Ex. 1 at ¶ 1). Plaintiff was assigned to work at the M.A.C. counter in Macy's department store in Jersey City, New Jersey (Id. ¶ 6). The handbook that she received from Defendant when she was hired stated: "Just as you are free to leave at any time, the company can also terminate your employment at any time with or without notice or cause" (Defendant's Local Civil Rule 56.1(a) Statement of Material

Facts Not in Dispute (hereafter "Defendant's 56.1(a) Statement"), ¶ 6).

In February 2002, before she began her employment with Defendant, Plaintiff was diagnosed with bipolar disorder (Compl. ¶ 3). Plaintiff states that her managers and supervisors at M.A.C. knew of her condition because Plaintiff revealed it to them and because she used M.A.C's medical insurance to cover payments related to the condition (Id. ¶ 4). Plaintiff states that because she has bipolar disorder, she is "not an upbeat person[,] does not interact or engage in conversation, and avoid[s] revealing details of her personal life" (Id. ¶ 5). However, Plaintiff contends that she was considered to be a "good worker" and that she had ample knowledge of cosmetics and skin care (Id.).

Plaintiff alleges that approximately two years prior to her termination, Sharlenia Roldan, a new manager, asked M.A.C. employees to stand in a line and publicly rate one another's overall performance (Id. ¶ 7). Plaintiff states that she received critique for not being forward and for having a "discreet and quiet" personality, which Plaintiff asserts is a result of her bipolar disorder (Id. ¶ 8). Plaintiff claims that she was forced to remind Roldan of her bipolar disorder in front of her co-workers, which caused her humiliation (Id.). Plaintiff states that this humiliation was deepened when Roldan made remarks that Plaintiff should find another job (Id.). On or about February 21, 2008, Plaintiff submitted a written complaint to Human Resources regarding this incident (Defendant's 56.1(a) Statement ¶ 10). In response, Human Resources required Roldan to apologize to Plaintiff (Id. ¶ 12). In July 2008, Plaintiff received a positive performance review from Roldan (Id. ¶ 13). However, on October 20, 2009, Plaintiff received written warnings for violating the M.A.C. dress code policy, violating the M.A.C. time and attendance policy, and engaging in insubordination (Id. ¶ 14).

Plaintiff further states that customers would sometimes return items to M.A.C. that were no longer sellable (Compl. ¶ 11). Plaintiff alleges that for years, Defendant permitted its makeup artists to use these items as testers (Id.). Plaintiff also states that the artists kept these items in their brush belts (Id. ¶ 13). However, Plaintiff states that Roldan changed this policy, and that the employees were informed that it was no longer permissible to use the returned items (Id. ¶ 12). Plaintiff alleges that she complied with this new policy (Id.). On December 4, 2009, Michael Kovacs, a Macy's Manager of Prevention and Loss, asked Plaintiff to meet him in his office (Defendant's 56.1(a) Statement ¶ 17). At the meeting, Plaintiff was questioned as to whether she ever took home used items prior to Roldan's new instruction (Compl. ¶ 13). Plaintiff admitted to such conduct (Id.). At the conclusion of the meeting, Plaintiff reviewed and signed a document entitled Loss Prevention Statement (the "Statement") (Defendant's 56.1(a) Statement ¶ 18). In the Statement, Plaintiff admits that she had taken M.A.C. products home with her (Id. ¶ 19). The Statement also contains the following acknowledgement by Plaintiff: "I explained to Michael that being that the product in the damage and return bin was going to be thrown away I would just keep it for use in the department or for personal gain" (Id.). Macy's informed M.A.C. that due to Plaintiff's admissions to Kovacs, Plaintiff was no longer permitted to work in any Macy's store (Declaration of Dimitri Minucci, ECF. No 39, Ex. 4 ¶ 5). On December 5, 2009, Plaintiff was informed over the telephone by Dimitri Minucci, a M.A.C. regional manager, that her employment was being terminated (Id. ¶ 7).

Plaintiff claims that although she took M.A.C. products home in her brush belt, she only brought her belt home in order to wash it, and she returned the products the next day (Affidavit of Katrina Ross, ECF No. 42, Ex. 1 ¶ 14). Plaintiff states that she did not have the benefit of reading the Statement before signing it (Id.). Plaintiff also states that although other employees

engaged in the same behavior, she later learned from security that she was the only employee to admit to taking home her brush belt (Compl. ¶ 13). According to Plaintiff, neither Macy's nor M.A.C. ever informed M.A.C. employees that they were not allowed to take home their belts (Ross Aff. ¶ 15). Plaintiff asserts that Roldan wanted her to be terminated due to her bipolar disorder, because Plaintiff refused to ring up a bulk sale using Roldan's employee identification number, and because Roldan wanted her niece to take Plaintiff's position (Id. ¶¶ 10, 12-13).

Plaintiff filed a four-count Complaint in the Superior Court of New Jersey, Law Division, Hudson County on March 23, 2012, alleging i) discrimination under Title VII of the Civil Rights Act, the Americans with Disabilities Act ("ADA"), and the New Jersey Law Against Discrimination ("NJLAD"), ii) retaliation under Title VII, the ADA, and the NJLAD, iii) negligent/intentional infliction of emotional distress, and iv) breach of contract (ECF No. 1, Ex. 1). Defendant removed the case to federal court on August 2, 2012 (ECF No. 1). Defendant filed the instant Motion for Summary Judgment on April 28, 2014 (ECF No. 39). Plaintiff filed an Opposition on May 29, 2014 ("Pl.'s Opp'n," ECF No. 42). Defendant filed a Reply on June 9, 2014 (ECF No. 43).

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(a), summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists only if

sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC, 877 F. Supp. 2d 140, 147 (D.N.J. 2012) (citing Anderson, 477 U.S. at 256-57). To do so, "[a] party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements." Id. (citing Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001)). Accordingly, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. DISCUSSION

### A. Discrimination Claims

#### i. Title VII

Count one of the Complaint alleges that Defendant violated Title VII by discriminating against Plaintiff because of her disability. However, Title VII only prohibits employers from discharging an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Thus, the type of discrimination alleged by Plaintiff is not covered by Title VII. In fact, this District has recognized that under the language of Title VII, "[d]isabled persons are not a protected class." Rawlins v. New Jersey Transit, No. 2:08-CV-01574, 2010 WL 5252841, at *2 (D.N.J. Dec. 17, 2010) aff'd, 431 F. App'x 145 (3d Cir. 2011); see also Sackett v. WPNT, Inc., No. 94-2207, 1995 WL 686708, at *7 (W.D. Pa. Sept. 19, 1995) aff'd, 91 F.3d 125 (3d Cir. 1996) ("We find that Title VII does not provide a cause of action for discrimination on

the basis of disability."). Accordingly, summary judgment is granted in favor of Defendant as to the Title VII claim in count one.

**ii. ADA and NJLAD**

Count one of the Complaint also alleges that Defendant discriminated against Plaintiff in violation of the ADA and NJLAD. It appears from the Complaint that Plaintiff bases these claims on two allegations: i) Defendant terminated Plaintiff due to her bipolar disorder, and ii) Defendant created a hostile work environment. In her Opposition, Plaintiff raises for the first time, a claim that Defendant failed to accommodate her disability. Since the claim is not part of Plaintiff's Complaint, this Court will not allow Plaintiff to pursue it. See Bey v. Daimler Chrysler Servs. of N. Am., LLC, No. 04-6186, 2006 WL 361385, at *11 (D.N.J. Feb. 15, 2006) (stating that "claims [that] were not alleged in the complaint . . . cannot be raised for the first time in opposition to a motion for summary judgment").[1] Plaintiff's discriminatory termination and hostile work environment claims will be addressed in turn.

**a. Discriminatory Termination**

Plaintiff alleges that Defendant violated the ADA and the NJLAD by terminating Plaintiff because of her disability. The Third Circuit has stated that the "familiar analytical framework" set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to analyze Title VII claims, "also guides an analysis of claims brought under the ADA." Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). Additionally, "the New Jersey Supreme Court . . . looks to this framework and federal standards to interpret the NJLAD." Motto v. City of Union

---

[1] This Court also notes that nowhere in the Complaint does Plaintiff state that she requested an accommodation for her disability. See Drozdowski v. Northland Lincoln Mercury, 321 F. App'x 181, 185 (3d Cir. 2009) ("[W]hen accommodations are at issue in an ADA claim, the burden is on the employee or a representative to inform the employer of both the disability and desire for an accommodation."). Further, when Plaintiff was asked at her deposition if Defendant ever accommodated her, she responded: "No accommodations were made. I mean, I didn't want any - I didn't want any pity" (ECF No. 39, Werner Dec., Ex. B. at 234:16-19).

City, No. 95-5678, 1997 WL 816509, at *7 (D.N.J. Aug. 27, 1997). Under McDonnell Douglas, a plaintiff must first "establish a prima facie case of discrimination." Photis v. Sears Holding Corp., No. 11-CV-6799, 2013 WL 3872519, at *5 (D.N.J. July 25, 2013) (quoting Jones v. School Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999)). To establish a prima facie case of disability discrimination, a plaintiff must show that "(1) [s]he was disabled (or perceived to be disabled); (2) [s]he was objectively qualified for [her] . . . former position; (3) [s]he was terminated; and (4) the employer sought someone to perform the same work after the plaintiff's discharge." Id. at *6 (quoting Simonetti v. Broadridge Fin. Solutions, Inc., No. 10-3903, 2012 WL 32931, at *10 (D.N.J. Jan. 5, 2012)). If the plaintiff can establish a prima facie case, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's termination." Id. at *5 (internal quotations and citation omitted). Next, the burden shifts back to the plaintiff, who must then "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id.

Defendant does not argue at this time that Plaintiff cannot establish a prima facie case of discrimination. Instead, Defendant asserts that Plaintiff cannot show that Defendant's articulated non-discriminatory reason for her termination, namely, Plaintiff's act of taking home company products and Macy's subsequent prohibition of Plaintiff working in any Macy's store, was pretextual. To make a showing of pretext, a plaintiff can set forth evidence that he was "treated differently from other similarly situated employees based on his [disability]." Mosca v. Cole, 384 F. Supp. 2d 757, 766 (D.N.J. 2005) aff'd, 217 F. App'x 158 (3d Cir. 2007). "To be deemed similarly situated the individuals with whom a plaintiff seeks to be compared must have engaged in the same conduct without such differentiating or mitigating circumstances that would

distinguish their conduct or the employer's treatment of them for it." Id.; see also Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000) (stating that a plaintiff can make a showing of pretext "by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness").

Here, Plaintiff claims that although she admitted to taking home company products, this was "something that was wholly innocent, permitted with the knowledge of [Roldan] done by every counterworker[]" (ECF No. 42, Ex. 1, Ross. Aff. ¶ 14). Plaintiff also states that Minucci, the M.A.C. manager who informed her that she was being terminated, "acknowledged to me that every girl was doing it, but I was the only one to admit it" (Id. ¶ 16). However, Plaintiff has not set forth any evidence regarding these other similarly situated employees. In Dennis v. Lowe's Home Ctrs., Inc., No. 1:08-CV-1742, 2010 WL 146458, at *1, 4 (M.D. Pa. Jan. 11, 2010), the plaintiff, who was terminated after he had a physical altercation with another employee, claimed that the defendant's reason for firing him was pretextual because other employees who had gotten into physical altercations were not fired. However, the plaintiff did not specify the dates of these incidents, nor did he provide any other actual evidence that the altercations occurred. Id. at *4. The court granted the defendant's motion for summary judgment, stating the following:

> At the summary judgment phase Plaintiff may not simply rely on the allegations in his complaint, but must come forward with some sort of evidence to support his claims. . . . Plaintiff must cite to *some* evidence in the record to support his claims and cannot "simply sit back and rest on the allegations in its complaint."

Id. at *4 (citing Celotex, 477 U.S. at 324); see also Hurley v. Atl. City Police Dep't, No. 96-4928, 1998 WL 351781, at *15 (D.N.J. May 28, 1998) (granting a defendant's motion for summary judgment on an NJLAD claim when the plaintiff "proffered no competent evidence that she was treated differently from a similarly situated person"). Similarly, in the present case, Plaintiff has offered no evidence that other employees took home company products and were not terminated,

nor has she offered any evidence other than her own allegation that Minucci informed her that "every girl was doing it," despite having ample time to conduct discovery.

Even if this Court accepted as true Plaintiff's allegations that other similarly situated employees were not terminated and that Minucci admitted that "every girl was doing it," it is fatal to Plaintiff's claim that she has not shown that Macy's Loss Prevention Department, which made the decision that Plaintiff could no longer work in a Macy's store, had any knowledge of Plaintiff's disability. See Photis, 2013 WL 3872519, at *9 (finding no pretext when the plaintiff's employer initiated an investigation into the plaintiff's conduct almost one month before the plaintiff had a seizure that was caused by his alleged disability). It was only after Defendant was notified by Macy's that Plaintiff was no longer permitted to work in a Macy's store that Defendant made the decision to terminate Plaintiff.[2] Plaintiff's own speculation that this reason was pretextual is not sufficient to survive a motion for summary judgment. See Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 413 (E.D. Pa. 2000) aff'd, 29 F. App'x 100 (3d Cir. 2002) ("Pretext cannot be established based on speculation and mere conclusory allegations.").

A final flaw in Plaintiff's claim is that she has established two non-discriminatory reasons that she believes contributed to her termination. First, Plaintiff states that Roldan persecuted her because Plaintiff refused to ring up a bulk sale using Roldan's employee identification number. Second, Plaintiff asserts that Roldan wanted to terminate her in order to have her niece take Plaintiff's position. Plaintiff, however, has failed to show that the reason for

[2] The court notes that Plaintiff states in her affidavit that Roldan "went and reported to security that I was the first person in, when a brush set has been missing" (Ross Aff. ¶ 11). Thus, it is possible that Macy's Loss Prevention Department only investigated Plaintiff due to Roldan's report. However, Plaintiff does not make this argument in her Opposition, nor has she provided any evidence that Roldan did not report other similarly situated employees. As discussed above, Plaintiff's own conclusory allegations are insufficient to withstand a motion for summary judgment. Further, even if Roldan did report Plaintiff, Plaintiff has not shown that Roldan's actions were motived by discrimination.

her termination was "discrimination" rather than for the alternative reasons that she identified. See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]" (citation omitted)); Bumbaca v. Twp. of Edison, 861 A.2d 156, 163 (N.J. Super. Ct. App. Div. 2004) (finding that the NJLAD does not prohibit nepotism).

Accordingly, because Plaintiff cannot show that there is an issue of material fact regarding whether Defendant's reason for Plaintiff's termination was pretextual, summary judgment is granted in favor of Defendant as to Plaintiff's discriminatory termination claims under the ADA and NJLAD in count one.

**b. Hostile Work Environment**

In paragraph one of the Complaint, Plaintiff asserts that "[D]efendant created and maintained a hostile work environment and subjected . . . [P]laintiff to on the job harassment" (Compl. ¶ 1). In her Opposition, Plaintiff's only acknowledgment of her hostile work environment claim is as follows: "Under NJLAD, the creation of a hostile work environmental and harassment on the job are also met. The medical condition was made to be disclosed by the actions of a supervisor and manager in the upper echelon of the MAC facility" (Pl.'s Opp'n at 3). To state a hostile work environment claim under the NJLAD, a plaintiff must show that:

> (1) the conduct would not have occurred but for the employee's protected class and that the conduct was (2) "severe or pervasive enough to make a (3) reasonable [member of the protected class] believe that (4) the conditions of employment were altered and that the working environment is hostile or abusive."

Meyers v. Bd. of Educ., No. 07-5058, 2010 WL 4387503, at *9 (D.N.J. Oct. 29, 2010) (quoting Lehmann v. Toys R Us, Inc., 626 A.2d 445, 453 (N.J. 1993)). In choosing the "severe or pervasive" standard, the Supreme Court of New Jersey "rejected an alternative regular-and-pervasive test that requires repetitive or recurrent acts to establish workplace harassment."

Taylor v. Metzger, 706 A.2d 685, 689 (N.J. 1998).[3] However, the Supreme Court of New Jersey also stated the following:

> [W]hile it "is certainly possible" that a single incident, if severe enough, can establish a prima facie case of a hostile work environment, "it will be a rare and extreme case in which a single incident will be so severe that it would, from the perspective of a reasonable [person situated as the claimant], make the working environment hostile."

Id. (quoting Lehmann, 626 A.2d at 455).

Here, the single incident referenced by Plaintiff in her Opposition does not meet this heightened standard. Plaintiff claims that after Roldan criticized her aloofness and lack of enthusiasm during a performance meeting, she was forced to reveal her bipolar disorder in front of the group. Plaintiff also states that after her revelation, Roldan "diminished [her], humiliated [her] and told [her] to practically look for a job" (Ross Aff. ¶ 5). However, Plaintiff does not allege that Roldan's intention was for Plaintiff to inform her co-workers of her bipolar disorder rather than to provide Plaintiff with constructive criticism, and thus she has not shown that Roldan's conduct would not have happened but for her bipolar disorder.[4] Further, Plaintiff's vague allegation does not show that the incident was so extreme as to make the working environment hostile, and Plaintiff does not provide any other evidence regarding the performance review meeting. As such, this Court does not find that "a rational factfinder could reasonably determine on the basis of [P]laintiff's evidence that [Roldan's conduct] was, under the surrounding circumstances, sufficiently severe to have created a hostile work environment." Taylor, 706 A.2d at 689-90.

---

[3] A similar standard is used under the ADA. See Hamera v. Cnty. of Berks, 248 F. App'x 422, 425 (3d Cir. 2007) (stating that to establish a hostile work environment claim under the ADA, a plaintiff must show that "the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment").

[4] It is also unclear whether Roldan knew of Plaintiff's bipolar disorder at this point. Although Plaintiff alleges in her Complaint that she was "forced to remind" Roldan of her disorder in front of her co-workers (Compl. ¶ 8), she states in her affidavit that she was "forced to reveal to [Roldan her] [b]ipolar [d]isorder" at this meeting (Ross Aff. ¶ 5).

Accordingly, because there is no issue of material fact as to whether Plaintiff was subject to a hostile work environment, summary judgment is granted in favor of Defendant as to Plaintiff's hostile work environment claims under the NJLAD and ADA in count one.

**B. Retaliation Claims**

**i. Title VII**

Count two of the Complaint alleges that Plaintiff's termination constituted unlawful retaliation in violation of Title VII. To make out a prima facie case of Title VII retaliation, "a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) the employer took a 'materially adverse' employment action; and (3) a causal connection exists between the employee's protected activity and the adverse employment action." Flax v. Delaware, 329 F. App'x 360, 364 (3d Cir. 2009). "In order for an employee's complaints to constitute protected activity, the complaint must pertain to conduct that is prohibited by Title VII." Boyce v. Commonwealth of Pennsylvania, No. 04CV0110, 2006 WL 3386626, at *6 (W.D. Pa. Nov. 22, 2006); see also Ferra v. Potter, 324 F. App'x 189, 192 (3d Cir. 2009) ("[I]n order to succeed on a Title VII retaliation claim, an employee must have an 'objectively reasonable' belief that the activity he opposes constitutes unlawful discrimination under Title VII."). Here, the February 2008 complaint that Plaintiff made to Human Resources pertained to the way that she perceived she was being treated due to her bipolar disorder. As discussed above, Title VII does not apply to disability discrimination claims. Accordingly, summary judgment is granted in favor of Defendant as to Plaintiff's retaliation claim under Title VII claim in count two.

**ii. ADA and NJLAD**

Count two of the Complaint also alleges that Plaintiff's termination constituted unlawful retaliation in violation of the ADA and NJLAD. The McDonnell Douglas burden-shifting

framework applies to retaliation claims under the ADA and NJLAD. See Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). To make out a prima facie case, a plaintiff must "demonstrate by a preponderance of the evidence that (1) [s]he engaged in a protected activity; (2) [s]he suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action." Holland v. Simon Prop. Grp., Inc., 495 F. App'x 270, 272 (3d Cir. 2012). Next, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the adverse action." Id. Finally, if the defendant can set forth a nondiscriminatory reason, the burden shifts back to the plaintiff to prove that the defendant's reason is pretextual. Id.

Here, Plaintiff wrote a letter to Human Resources in February 2008 complaining that Roldan was discriminating against her due to her bipolar disorder.[5] Plaintiff was terminated nearly two years later in December 2009. Defendant does not argue at this time that Plaintiff did not engage in a protected activity or that she did not suffer an adverse action. Instead, Defendant argues that i) Plaintiff cannot establish a causal connection between the protected activity and the adverse action, and ii) Plaintiff cannot show that Defendant's nondiscriminatory reason for terminating her was pretextual.[6]

---

[5] Although the language in count two of the Complaint does not specify the protected activity engaged in by Plaintiff, paragraph nine of the Complaint references Plaintiff's complaint to Human Resources. However, in her opposition, Plaintiff makes the following allegation:

> [T]he ADA prohibits covered employees from retaliating against individuals who makes a charge, testify, assists or participates in any manner in an investigation proceedings or hearing conducted under the ADA. We submit to the court that the letter and report in Werner's declaration Exhibit H constitute the initiation of a proceedings . . . .

(Pl.'s Opp'n at 2). That Exhibit that Plaintiff is referring to is the Statement signed by Plaintiff after her meeting with Macy's Manager of Prevention and Loss. This Court fails to see how the Statement can be the protected activity upon which Plaintiff seeks to base her retaliation claim, as the Statement is an admission from Plaintiff that she took home company products, rather than a complaint of disability discrimination. See Cottrell v. Matt Blatt, Inc., No. 11-610, 2011 WL 2975482, at *4 (D.N.J. July 21, 2011) ("Both the ADA and NJLAD prohibit retaliation against individuals for opposing conduct prohibited under the acts."). This Court will assume that the reference to Exhibit H was an error and that Plaintiff intends to base her claim upon the complaint that she made to Human Resources in February 2008.

[6] As discussed above, Plaintiff has not shown that Defendant's nondiscriminatory reason for terminating her was pretextual. Nonetheless, this Court will address whether Plaintiff has established a causal connection between her

The Third Circuit has stated that "[t]he mere fact that an adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." Rivera v. Cont'l Airlines, 56 F. App'x 567, 570 (3d Cir. 2003); see also El-Sioufi v. St. Peter's Univ. Hosp., 887 A.2d 1170, 1189 (N.J. Super. Ct. App. Div. 2005) (stating that "mere temporal synchrony alone is insufficient to sustain [a] plaintiff's prima facie case"). However, temporal proximity between a protected activity and an adverse action may be enough to support an inference of causation if "the facts of the particular case are so 'unusually suggestive of retaliatory motive.'" Young v. Hobart W. Grp., 897 A.2d 1063, 1073 (N.J. Super. Ct. App. Div. 2005) (citation omitted). If "the timing alone is not 'unusually suggestive,' the plaintiff must set forth other evidence to establish the causal link." Id. With respect to the present case, although there is no bright line in determining the amount of time that is considered "unusually suggestive," this Court considers twenty-two months to be too long. See id. (finding that "[t]he temporal proximity of [the plaintiff] being terminated four months after her complaint to [her supervisor was] not 'unusually suggestive'"); Morrison v. Carpenter Tech. Corp., 193 F. App'x 148, 154-55 (3d Cir. 2006) (finding that the timing of four months between a complaint of racial harassment and an alleged adverse action was not "sufficiently close to be 'unduly suggestive'"); Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (finding that a two-month gap between a protected activity and an adverse action was not "unduly suggestive"). Additionally, Plaintiff has not set forth any other evidence to establish the causal link. Finally, Plaintiff has not shown that Macy's Loss Prevention Department had any knowledge of Plaintiff's February 2008 complaint to M.A.C.'s Human Resources.[7] See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 505 (3d Cir.

---

protected activity and the adverse action.

[7] As discussed above, Plaintiff alleges in her affidavit that Roldan informed Macy's that Plaintiff had taken home a

1997) ("In addition to the lack of temporal proximity between the 1992 protected conduct and the 1994 decision to deny [the plaintiff's] application for a disability pension, there is no evidence that the members of the pension plan committee were aware of [the plaintiff's] protected activity").

Accordingly, because there is no issue of material fact as to whether a causal connection exists between Plaintiff's protected activity and her termination, summary judgment is granted for Defendant as to the retaliation claims under the ADA and NJLAD in count two.

**C. Negligent/Intentional Infliction of Emotional Distress Claim**

Count three of the Complaint alleges that "[t]he actions of the defendant, his agents, and employees have caused proximately, mental distress, and psychological injuries to plaintiff" (Compl. ¶ 23). It is unclear whether Plaintiff's claim is one for intentional or negligent infliction emotional distress. Plaintiff's Opposition provides no clarification, as it does not address Defendant's arguments pertaining to count three. However, the claim fails regardless of whether it is one for negligent or intentional infliction of emotional distress.

With respect to negligent infliction of emotional distress, this District has found that if such a claim is based on employer negligence, it is barred by the New Jersey Worker's Compensation Act, N.J.S.A. § 34:15-8 ("NJWCA"). See Rivera v. Cracker Barrel Old Country Store Inc., No. 02-4160, 2003 WL 21077965, at *5 (D.N.J. Mar. 3, 2003) ("To the extent that Count IV of the Complaint alleges negligent infliction of emotional distress, this Court dismisses for failure to state a claim as it is clear that [the NJWCA] provides the exclusive remedy for workplace injuries that involve employer negligence."); Smith v. Exxon Mobil Corp., 374 F. Supp. 2d 406, 424 (D.N.J. 2005) ("[The plaintiff's] claims for negligent infliction of emotional

---

brush set. However, Plaintiff does not assert that Roldan informed Macy's about Plaintiff's February 2008 complaint.

distress . . . will be dismissed. The [NJWCA] provides the exclusive remedy by which an employee may recover for injuries caused by workplace negligence."); Moore v. Passaic Cnty. Technical Inst., No. A-2929-04T5, 2006 WL 1585706, at *10 (N.J. Super. Ct. App. Div. June 12, 2006) (stating that the NJWCA "provides the exclusive remedy by which an employee may recover for injuries caused by workplace negligence" (citation omitted)). As such, Plaintiff cannot assert a negligent infliction of emotional distress claim against Defendant.

With respect to intentional infliction of emotional distress, if such a claim is "based on 'the same allegations supporting Plaintiffs' NJLAD claims . . . the intentional infliction of emotional distress claim is preempted because 'supplementary common law causes of action may not go to the jury when a statutory remedy under the [NJ]LAD exists.'" Photis, 2013 WL 3872519, at *11 (quoting Quarles v. Lowe's Home Ctrs., Inc., No. 04-5746, 2006 WL 1098050, at *11 (D.N.J. Mar. 31, 2006)); see also Everson v. JPMorgan Chase Bank, No. 12-07288, 2013 WL 1934666, at *2 (D.N.J. May 8, 2013) ("Because of the broad availability of remedies under the LAD, both state and federal courts in New Jersey have frequently held that the LAD bars common law claims based on the same operative facts as underlie the LAD claim."). Here, count three does not set forth any facts that are unique from Plaintiff's NJLAD claims, as the Complaint simply states that count three "incorporates and repeats the allegation in [paragraphs one through twenty-one] of Count I, II as if they were stated herein at length" (Compl. ¶ 22). However, as this Court is granting summary judgment in favor of Defendant as to Plaintiff's NJLAD claims, it will address the merits of Plaintiff's intentional infliction of emotional distress claim.

It is unclear whether Plaintiff intends to base her intentional infliction of emotional distress claim on the events that transpired at the performance meeting with her co-workers or on

her termination from M.A.C. Her Opposition provides no clarification.[8] However, a claim based on either event fails. To state a claim for intentional infliction of emotional distress, a plaintiff must show that:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . .; (2) that the conduct was "extreme and outrageous"; (3) that the actions of the defendant were the cause of the plaintiff's distress . . .; and (4) that the emotional distress sustained by the plaintiff was severe.

Young, 897 A.2d at 1074 (N.J. Super. Ct. App. Div. 2005) (citation omitted). Here, as discussed above, Plaintiff has not shown that Roldan knew or should have known that Plaintiff would reveal her bipolar disorder in front of her co-workers, nor has she established that when Defendant terminated her it knew or should have known that Plaintiff would experience such severe emotional distress. Thus, Plaintiff has not established the first element of intentional infliction of emotional distress, Further, with respect to the second element, the New Jersey Appellate Division has stated that because "the workplace has too many personal conflicts and too much behavior that might be perceived as uncivil for the courts . . . conduct in the workplace will rarely be so egregious as to give rise to a claim of intentional infliction of emotional distress." Ingraham v. Ortho-McNeil Pharm., 25 A.3d 1191, 1197 (N.J. Super. Ct. App. Div. 2011). Here, Plaintiff has provided no evidence that Roldan's act of critiquing her during a routine performance meeting rises to the heightened standard set forth by the New Jersey Appellate Division. She has also failed to show that the fact that she was terminated by Defendant meets this standard.

---

[8] The language of the Complaint suggests that Plaintiff intends to base her claim on the performance review meeting, as the Complaint states that this meeting caused Plaintiff humiliation (Compl. ¶ 8). However, attached to Plaintiff's Opposition is a letter from her doctor stating: "It is my opinion that [Plaintiff's] dismissal triggered a severe depression that resulted in numerous hospitalizations, over 20 electro shock treatments and [Plaintiff] becoming suicidal" (Ross Aff., Ex. 1). Thus, this Court will address the claim under both events.

Accordingly, because no issue of material fact exists as to a negligent or intentional infliction of emotional distress claim, summary judgment is granted in favor of Defendant as to count three.

**D. Breach of Contract Claim**

Count four alleges that Defendant breached its employment contract with Plaintiff by terminating Plaintiff without providing her "due process under the contract as stated in the handbook or manual of employment" (Compl. ¶ 25). Defendant argues that the employee handbook does not constitute a contract. Plaintiff's opposition does not address this argument.

In Woolley v. Hoffmann-La Roche, Inc., 491 A.2d 1257, 1264 modified, 499 A.2d 515 (N.J. 1985), the Supreme Court of New Jersey stated that "when an employer of a substantial number of employees circulates a manual that, when fairly read, provides that certain benefits are an incident of the employment . . . the judiciary . . . should construe them in accordance with the reasonable expectations of the employees." However, to state a claim under Woolley, a plaintiff must "bring to the Court's attention some provision or language in the employment manual that guarantees the employee will not be terminated except for good cause." Bell v. KA Indus. Servs., LLC, 567 F. Supp. 2d 701, 710 (D.N.J. 2008) (citation omitted). Here, Plaintiff does not identify a single provision of her employee handbook that indicates that she can only be fired for cause. To the contrary, the copy of the handbook provided by Defendant provides the following: "Just as you are free to leave at any time, the company can also terminate your employment at any time with or without notice or cause" (Werner Dec., Ex. D at 5). Thus, the holding in Woolley is inapplicable, as the court held that "*absent a clear and prominent disclaimer*, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would

otherwise be terminable at will." 491 A.2d at 1258 (emphasis added).

Plaintiff also argues that it was Defendant's policy to provide an employee with three warnings before dismissal. This allegation is not set forth in Plaintiff's Complaint, but was asserted in her deposition (Werner Dec, Ex. B at 74:1-3). However, during the deposition, Plaintiff was unable to identify any portion of the handbook that references the three warning policy, and she subsequently admitted that it "may have been a Macy's policy" (Id. at 77:1-11). Further, contrary to Plaintiff's unsubstantiated assertion, the handbook expressly states the following: "Sometimes the possibility of a dismissal will be discussed in advance. In other instances, a dismissal can result from a serious violation of Company policy with no prior discussion or warning" (Werner Dec, Ex. D at 5). Thus, it is clear that Defendant was not obligated to provide Plaintiff with any warning, much less three warnings, before terminating her.

Accordingly, because no issue of material fact exists as to whether Plaintiff's employee handbook was a contract, summary judgment is granted in favor of Defendant as to count four.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **granted**. An appropriate order follows this Opinion.

Jose L. Linares, U.S.D.J.

Date: June 17, 2014
Original: Clerk's Office
cc: Hon. Joseph A. Dickson U.S.M.J.
All Counsel of Record
File